1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                              **DISTRICT OF NEVADA**

10

11   ZURICH AMERICAN INSURANCE        )        3:13-cv-00512-HDM-VPC
     COMPANY, a foreign corporation,  )
12   individually and as subrogee for )
     its insureds UNION PACIFIC       )        ORDER
13   RAILROAD COMPANY AND UNION       )
     PACIFIC MOTOR FREIGHT COMPANY;   )
14   DISCOVER PROPERTY & CASUALTY     )
     INSURANCE COMPANY, a foreign     )
15   corporation, individually and as )
     subrogee for its insureds UNION  )
16   PACIFIC RAILROAD COMPANY and
     UNION PACIFIC MOTOR FREIGHT
17   COMPANY,

18                  Plaintiffs,

19   vs.

20   INTERMODAL MAINTENANCE SERVICES,
     INC., a foreign corporation; DOES
21   I-X, inclusive; and ROE INSURANCE
     COMPANIES XI-XX, inclusive; and
22   MOE CORPORATIONS XXI-XXX,
     inclusive,
23
                    Defendants.
24   _____

25        Plaintiffs' Motion for Summary Judgment, or in the

26   Alternative, Partial Summary Judgment (#43), Defendant's Motion for

27   Partial Summary Judgment (#50), Defendant's Motion to Dismiss for

28   Spoliation of Evidence (#40), Plaintiffs' Motion for Leave to

                                    1

Supplement (#62) and Plaintiffs' Requests for Judicial Notice (##53 and 58) having come on for hearing on February 26, 2015, Ryan Kerbow, Esq. appearing on behalf of Plaintiffs ZURICH AMERICAN INSURANCE COMPANY and DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY (collectively, "Plaintiffs") and Alan Westbrook, Esq. appearing on behalf of Defendant INTERMODAL MAINTENANCE SERVICES, INC. ("Defendant"), the court having reviewed all related briefing and heard oral argument from counsel makes these Findings of Fact and Conclusions of Law.

To the extent any Findings of Fact also contain Conclusions of Law, said Conclusions of Law should be considered as such. To the extent any Conclusions of Law also contain Findings of Fact, said Findings of Fact should be considered as such.

**Findings of Fact**

1. This is an indemnity, contribution, and breach of contract action following the settlement of *Bert & Linda Brasher v. Union Pacific Railroad Company, et al.* that was pending in the Second Judicial District Court for the State of Nevada in and for the County of Washoe, Case No. CV08-01825 (the "Underlying Action"). Plaintiffs were the defending and indemnifying insurance companies for Union Pacific Motor Freight Company and Union Pacific Corporation ("Union Pacific") in the Underlying Action and paid a total settlement of $2,000,000 to Bert and Linda Brasher, Plaintiffs in the Underlying Action, on behalf of both Union Pacific and IMS.

2. The Underlying Action arose from injuries Mr. Bert Brasher sustained on July , 2006, at a loading dock in Reno, Nevada while employed by Devine Intermodal ("Devine") as a truck driver.

Specifically, Mr. Brasher alleged he was manually operating a spring-loaded slider arm to adjust the rear axle assembly of a 53-foot trailer chassis when his left hand was crushed because the slider arm allegedly popped out of position and retracted. As a result, his left hand was pinned between the slider arm handle and the z-bar metal plate of the chassis' tandem axle assembly. Mr. Brasher sustained a laceration to his left middle finger for which he underwent surgery. He later developed reflex sympathetic dystrophy, a type of complex regional pain syndrome. Mr. Brasher claimed he had complete and permanent loss of use of his left arm and constant pain. He asserted multiple damage claims including medical expenses, wage loss, and loss of earning capacity.

3. The subject trailer chassis was owned by Union Pacific and interchanged by Devine at Union Pacific's intermodal ramp in Sparks, Nevada. Pursuant to a Ramp Contractor Agreement with Union Pacific (the "Contract"), Defendant performed terminal operating services at the Sparks, Nevada intermodal ramp where the subject trailer chassis was interchanged prior to the accident, including maintenance and repair of the chassis. The Contract contains an express indemnity provision that reads as follows:

> The Contractor shall indemnify and hold harmless the Railroad [. . .] against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorneys' fees, arising from or growing out of any injury to or death of persons whomsoever (including officers, agents and employees of the Railroad, of the Contractor and of any subcontractor, as well as other persons) or loss of or damage to property whatsoever (including property of or in the custody of the Railroad, the Contractor or any subcontractor as well as other property). The right to indemnify shall accrue when such injury, death, loss or damage occurs from any cause and is associated in whole or in part with the work performed under this agreement, a breach of the agreement or the failure to observe the

health and safety provisions of the agreement or any
activity or omission arising out of performance or
nonperformance of this agreement. However, the Contractor
shall not indemnity the Railroad when the loss is caused
by the direct active negligence of the Railroad.

4. The Contract also required Defendant to procure commercial
general liability insurance coverage for Union Pacific with a
single occurrence limit of $5 million, including, but not limited
to, broad form contractual liability and coverage for bodily
injuries. Further, the Contract required Defendant to procure
business automobile coverage with a combined single limit of at
least $1 million per occurrence, including, but not limited to,
coverage for bodily injuries and for all vehicles non-owned. The
Contract stated that "[a]ll policy(ies) required above (excluding
Workers Compensation and Professional Liability) shall provide
severability of interests and shall name Railroad as an additional
insured."

5. Section 7 of the Contract entitled "Specifications for
Intermodal Trailer/Tire Repairs/Replacements" provides, in part,
the following:

> **Contractor shall perform any necessary repairs to the
> intermodal Equipment in order to keep such Equipment in
> good operating condition.** Contractor shall furnish labor
> and shall provide all parts, forms, and supplies as
> requested by the Railroad in order to make repairs to said
> Equipment. Contractor shall maintain at each Facility an
> inventory of supplies and repair parts in such content and
> quality as are jointly determined by Contractor and the
> Railroad Representative from time to time, but in all
> cases in such content and quality as are reasonably
> determined to be required for the Work.

(Emphasis added.) Section 9, "Specifications for Intermodal
Trailer/Tire Repairs/Replacements," provides, in part:

> **Railroad agrees to assist Contractor in locating any piece
> of Equipment in need of repair,** and shall position the
> Equipment at an agreed service area for servicing, if

4

possible, in a manner so as not to cause undue delay to
the Maintenance of Equipment.

(Emphasis added.) Section 3, "Trailer/Container/Chassis Repair,"

provides, in part:

Repairs and maintenance to any railroad owned or
controlled Intermodal Equipment exceeding $450.00 for
owner responsibility repairs must have an authorization
number from the Equipment owner, which is to be obtained
by the Contractor from the Equipment owner.

Section 5 entitled "Trailer/Container/Chassis Repair" provides, in

part, the following:

Contractor shall maintain all records of all repairs as
well as any and all Federal Highway Administration (FHWA)
Inspections or California Bi-Annual (BIT) Inspections, if
applicable, performed in accordance with Railroad policy,
and shall furnish such reports as required by the Railroad
Representative as shown in Item No. 13, Index of
Maintenance and Repair Schedules and Forms, upon request.

6. On June 30, 2008, the Brashers filed a Complaint (Case No.

CV08-01753) naming Union Pacific as a defendant. Mr. Brasher's

employer on the date of loss, Devine Intermodal, filed a Complaint

on July 7, 2008 (Case No. CV08-01825). The two cases were

consolidated on December 9, 2008.

7. The Brashers' Complaint alleged that "Union Pacific

Railroad Company [ . . . ] negligently and carelessly performed

various functions, including, but not limited to, negligent

inspection, maintenance, servicing and repair of said trailer

chassis, horizontal sliding bar and key way slot." (Complaint,

Paragraph 15.)

8. On June 6, 2012, through legal counsel, Union Pacific sent

a letter tendering its defense and indemnity regarding the

Brashers' claims to Defendant. In a letter dated July 25, 2012,

Defendant rejected union Pacific's defense and indemnity.

9. On September 13, 2012, Union Pacific filed a third-party

complaint against Defendant in the Underlying Action for contractual indemnity, contribution and breach of contract. In its breach of contract claim, Union Pacific alleged that Defendant failed to procure an insurance policy naming Union Pacific as an additional insured as required pursuant to the Contract.

10. On November 26, 2012, the Brashers filed a Third Amended Complaint to Substitute Proper Parties naming IMS as a defendant in the Underlying Action. The complaint alleged, in part:

> Intermodal Maintenance Services, Inc. [. . .] negligently and carelessly performed various functions, including, but not limited to, negligent inspection, maintenance servicing and repair of said trailer chassis, horizontal sliding bar and key way slot.

11. At an all-party mediation on November 16, 2012, in Case No. CV08-01753, Plaintiffs negotiated a settlement with the Brashers in the amount of $2 million to extinguish both Union Pacific and Defendant's legal liabilities and in exchange for dismissal of the Brashers' Complaint against Union Pacific and Defendant. On November 21, 2013, Union Pacific filed a Motion for Determination of Good Faith Settlement and also placed the material terms of its settlement on the Court's record at a hearing on November 29, 2012. IMS opposed Union Pacific's Motion, and the Motion was argued on January 24, 2013.

12. During the hearing on January 24, 2013, the court asked counsel for Union Pacific to identify "what litigation or what causes of action would survive" if the Court granted the motion. Counsel responded as follows:

> [I]f the motion is granted, then the only action Union Pacific will be involved in, also, given that the motions for determination by SAF and Hyundai were just granted, if our motion is also granted, the only remaining action involving my client would be its cross-claim for express

1    indemnity and contribution against IMS and Devine
2    Intermodal.

3        Shortly thereafter, the court asked whether anyone disagreed
4    with what would be left, and permitted counsel for Union Pacific to
5    proceed. Counsel then stated, in part:

6        Okay. So as we sort of alluded to already, Your Honor, IMS
         is the only party that's filed an opposition and an errata
7        thereto that clarified that if our motion is granted, it
         does not affect any express contractual claims between
8        Union Pacific and Devine. That's an accurate statement of
         law.
9
         On February 8, 2013, the Court issued an Order Granting Union
10   Pacific's Motion. On February 15, 2013, IMS filed a Motion that
11   requested the court issue a supplemental order clarifying that all
12   claims filed against IMS except Union Pacific's are dismissed and
13   forever barred as a result of Union Pacific's settlement with
14   Plaintiffs. The court issued an Order Granting IMS's Motion to
15   Clarify on March 15, 2013, and a Corrected Order that the $2
16   million settlement extinguished both Union Pacific and Defendant's
17   legal liabilities to all parties. Footnote 5 on page 7 of the
18   Corrected Order states,

19       As discussed above, UPRR asserts all of its claims against
20       IMS survive after the instant Motion is granted. By
         granting the instant Motion, the Court does not decide
21       whether UPRR's assertion is accurate. Nor does the Court
         express an opinion as to whether UPRR will succeed on the
22       merits of any of its claims. Those matters are not before
         the Court by way of the instant motion.

23       13. On March 4, 2013, in Case No. CV08-01753, Defendant filed
24   a Motion in Limine arguing that it was entitled to summary
25   adjudication on Union Pacific's contractual claims on the basis
26   that Union Pacific could not establish damages because Union
27   Pacific's insurers (Plaintiffs in the present case) funded the
28   settlement. Subsequently, on March 25, 2013, Union Pacific and IMS

entered into a Settlement Agreement and Release and Reservation of Claims. That agreement provides, in part, the following:

Mutual Releasors acknowledge that this Release is limited and does not include, affect, or otherwise release any other claims, rights or defenses Mutual Releasors have, and in no way shall act as a bar, defense, waiver, estoppel, or retraxit in any separate subrogation action by Zurich America Insurance Company ("Zurich") and/or Discover Property & Casualty Insurance Company ("Discover") against Releasees and/or Releasees' insurance carriers regarding the $2,000,000.00 settlement paid by Zurich and Discover on behalf of Releasors and Releasees to Plaintiffs in the Underlying Action, and the defense fees and costs paid by Zurich in its defense of Releasors in the Underlying Action.

An Order Granting Stipulation for Dismissal of Union Pacific's Cross-Claim against IMS without prejudice was filed on March 28, 2013. A Stipulation for Dismissal With Prejudice of the Brashers' Complaint against IMS was filed on March 28, 2013.

14. On September 17, 2013, Union Pacific assigned all rights of action arising out of the Contract to Plaintiffs. On September 18, 2013, Plaintiffs filed the instant Complaint asserting claims for relief for Breach of Contract, Express Indemnity, Implied and Equitable Indemnity, and Contribution (#1). IMS filed an Answer on November 13, 2013 (#6).

15. Plaintiffs were damaged in the amount of $2,589,313 in connection to the Brasher's claims. This amount consists of a $2,000,000 settlement payment to the Brashers, plus $589,313 in fees and costs incurred in connection to Union Pacific's defense in the underlying litigation.

8

**Conclusions of Law**

16. IMS's duty under the Contract to indemnify Union Pacific was broad. The duty was triggered by any personal injury or claim associated in whole or in part with the work under the Contract. No finding of negligence by IMS was required for the duty to indemnify to trigger.

17. In the Underlying Action, Mr. Brasher's personal injury arose in connection to a bent slider bar on an intermodal trailer chassis that, prior to the injury had been located at Union Pacific's intermodal ramp in Sparks, Nevada, where IMS was contracted to perform maintenance services on Union Pacific's intermodal equipment.

18. The Contract clearly sets forth a duty for IMS to inspect intermodal equipment at Union Pacific's facility, including trailer chassis of the sort that injured Mr. Brasher and to repair such equipment in order to keep it in good operating condition. Mr. Brasher's injury was, therefore, associated in whole or in part with IMS's work under the Contract. Thus, Mr. Brasher's injuries in the underlying litigation were associated in whole or in part with IMS's work under the Contract and triggered IMS's contractual duty to indemnify Union Pacific. There are no material issues of fact in this regard.

19. Similarly, Mr. Brasher's injury claims and Mrs. Brasher's related loss of consortium claims in the underlying litigation arose in connection to the bent slider bar. In particular, the Brashers sued IMS directly in that litigation alleging that Mr. Brasher's personal injuries resulted from IMS's negligent performance of its inspection and maintenance duties. Therefore,

MR. And Mrs. Brasher's claims in the underlying litigation were associated in whole or in part with IMS's work under the Contract and, therefore, triggered IMS's contractual duty to indemnify Union Pacific. There are no material issues of fact in this regard.

20. The Contract contains an express exception to the duty to indemnify that applies where an injury or claim is caused by Union Pacific's direct active negligence. IMS posits that Union Pacific's duty to inspect the subject chassis and failure to do so raises a material issue of fact regarding whether the Brasher's injuries or claims were caused by Union Pacific's active negligence. However, a failure of Union Pacific to identify or repair the bent slider arm is not material to IMS avoiding liability. Since IMS is unable to provide any evidence that an affirmative act by Union Pacific may have caused Mr. Brasher's injuries - such as evidence that Union Pacific bent the slider handle or knew that the slider handle was bent but decided to leave it in place - IMS has failed to raise a triable issue of fact that the "active negligence" exception to the Contract's indemnity provision applies in this case.

21. In response to Plaintiffs' assertion that IMS failed to procure a commercial liability policy in the amount of $5 million and a business automotive insurance policy in the amount of $1 million, both naming Union Pacific as an additional insured, counsel for IMS concedes that policies meeting these requirements have not been produced in this litigation. The only evidence IMS provides in defense of the alleged breach of the Contract is speculative deposition testimony from an IMS representative that she believes IMS may have obtained the insurance policies in accordance with the Contract. This evidence is insufficient. The

Court, therefore, concludes that no triable issue of fact exists that IMS breached the Contract by failing to procure the specified insurance coverage.

22. IMS raises a statute of limitations defense regarding Plaintiffs' breach of contract claim. An issue exists regarding whether Nebraska's five-year statute of limitations or Nevada's six-year statute of limitations period applies to this dispute. Plaintiffs argue that the statute of limitations of the forum state (Nevada) applies to this dispute while IMS argues that Nebraska's statute of limitations applies pursuant to the Contract's choice of law provisions. Here, applying the Restatement's conflict of law provision, the court finds (1) there is no evidence that Nebraska governing law was selected in anything other than good faith between the parties; (2) Nebraska has a substantial relation to the transaction because Union Pacific is headquartered in Nebraska; and (3) applying Nebraska's statute of limitations comports with Nevada's recognized public interest in recognizing freedom to contract. Therefore, the court concludes Nebraska's statute of limitations applies to this case.

23. The court finds that IMS had a continuing obligation under the Contract to provide the specified insurance. Therefore, IMS was in continuing breach of the Contract until the contract period ended on November 15, 2007. Since Plaintiffs filed the present action on September 18, 2013, this would be outside the five-year statute of limitations period under Nebraska law. Therefore, if equitable tolling did not apply in this case regarding the breach of contract claim, this claim would be time-barred.

24. The court finds as a matter of law that the circumstances

justify application of the doctrine of equitable tolling. "Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (quotation omitted). Here, Union Pacific brought the breach of contract claim regarding insurance coverage in the underlying case on September 13, 2012, which was within the five-year statutory period. Subsequently, on March 25, 2013, after the court in the underlying case granted Union Pacific's motion for a good faith settlement, IMS and Union Pacific entered a written agreement pursuant to which Union Pacific dismissed its third-party claims against IMS so that the real parties in interest on those claims, Plaintiffs in this case, could pursue this subrogation action. In effect, the court finds as a matter of law that Plaintiffs in this matter have been diligently pursuing the contract claim against IMS since Union Pacific's third-party claim against IMS was filed on September 13, 2012. As a result, the defense of the statute of limitations does not bar that claim.

    25. IMS raises a judicial estoppel defense to the breach of contract claim principally based on one comment made by counsel for Union Pacific at the hearing on the Motion for Determination of Good Faith Settlement on January 24, 2013. Namely, during a discussion on the record regarding what claims would survive a good faith settlement determination, counsel for Union Pacific did not mention the contract claim. In *New Hampshire v. Maine*, 532 U.S.

742, 743, 121 S.Ct. 1808 (2001), the Court described the doctrine of judicial estoppel as follows:

> Judicial estoppel is a doctrine distinct from the res judicata doctrines of claim and issue preclusion. Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position formerly taken by him. *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578. The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Courts have recognized that the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, this Court does not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

Here, none of the factors for application of the doctrine are present. That is, the inclusion of the breach of contract claim in the present action is not clearly inconsistent with the earlier position taken by Plaintiffs' predecessor in interest in the Underlying Action, Union Pacific. Notably, counsel for Union Pacific stated during the hearing that the settlement would not affect any of Union Pacific's express contract claims. Further the Settlement Agreement and Release and Reservation of Claims that Union Pacific and IMS entered on March 25, 2013, expressly preserved the entire subrogation action with no limitation

13

regarding the breach of contract claim.

In regard to the second factor, the facts show that counsel's statement did not have the effect of misleading the court. Notably, in its Corrected Order of March 15, 2013, the court specifically wrote, "UPRR asserts *all of its claims* against IMS survive after the instant Motion is granted." (Emphasis added.) Thus, if the court had any confusion regarding UPRR's position on which claims would survive the good faith settlement determination, it was cleared up by the time the court made its ruling. Moreover, the court wrote, "By granting the instant Motion, the Court does not decide whether UPRR's assertion [that all its claims against IMS survive a good faith settlement determination] is accurate. [. . .] Those matters are not before the Court by way of the instant Motion." Thus, the court's ruling granting the Motion for Determination of Good Faith Settlement was not in any way based on a representation by counsel for Union Pacific that the breach of contract claim would not survive the good faith settlement determination.

Third, the court finds there is no prejudice to IMS resulting from the inclusion of the contract claim in the present action. IMS argues that it has suffered an unfair detriment because the contract claim is "new and unexpected." However, the claim is neither new nor unexpected since it was present in the Underlying Action and since the parties entered a written agreement that expressly preserved the entirety of Plaintiff's claims against IMS. The court finds that Union Pacific's settlement with the Brashers in the underlying case had no impact on Union Pacific's breach of contract claim against IMS other than to add the amount paid in

settlement to the damages resulting from IMS's breach. As a matter of law, the doctrine of judicial estoppel does not bar Plaintiff's contract claim regarding insurance coverage.

26. IMS has failed to assert that there are any material issues of fact in dispute on the amount of damages Plaintiffs sustained, including the $2,000,000 settlement, together with fees and costs of $589,313. The court finds that there are no material issues of fact in this regard.

27. The court finds that the issues raised in Plaintiffs' motion are dispositive. Consequently, it does not need to reach the issues raised in IMS's Motion to Dismiss for Spoliation of Evidence.

28. The court reviewed the issues raised by both parties regarding Plaintiffs' Motion for Leave to Supplement its Motion for Summary Judgment. Under Federal Rule of Civil Procedure 56(e), the court may give a party an opportunity to properly support an assertion of fact in a motion for summary judgment. Here, IMS objected to certain documentary evidence in support of Plaintiffs' motion on the grounds of hearsay and lack of foundation. Plaintiffs then moved to supplement their motion to address the objections. The court grants Plaintiffs' Motion. The court finds the documentary evidence, combined with the supplement, sufficient to deny the original objection IMS raised.

29. Plaintiffs have two outstanding requests for judicial notice that IMS opposed asserting that Plaintiffs had misused the doctrine. The Court may take judicial notice of judicial or administrative proceedings which have a direct relation to the matter at issue, as is the case here, provided that notice does not

extend to the veracity of the arguments and disputed facts contained therein. The court takes judicial notice of the existence of the matters of public record presented by Plaintiffs.

30. Plaintiffs are entitled to judgment in the amount of $2,589,313.

**Conclusion**

Based on the Findings of Fact and Conclusions of Law set forth above,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Summary Judgment on its express indemnity and breach of contract claims is GRANTED. Plaintiffs are entitled to judgment in the amount of $2,589,313, together with interest at the lawful rate at the time of entry of judgment until paid in full.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that IMS's Motion for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that IMS's Motion to Dismiss for Spoliation of Evidence is DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Leave to Supplement its Motion for Summary Judgment under F.R.C.P. 56(e) is GRANTED.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that Plaintiffs' Requests for Judicial Notice are GRANTED.

IT IS SO ORDERED.

DATED: This 20th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE